UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EXPRESS LIEN, INC.                    CIVIL ACTION

VERSUS                               NO: 16-2926

NATIONWIDE NOTICE, INC.              SECTION: "J" (4)

## ORDER AND REASONS

Before the Court is a *12(b)(6) Motion to Dismiss, Motion to Strike Claim for Attorneys' Fees and Treble Damages, and Motion for Award of Attorneys' Fees and Costs* **(R. Doc. 22)** filed by Defendant, Nationwide Notice, Inc. (Defendant), an opposition thereto (R. Doc. 24) filed by Plaintiff, Express Lien, Inc., doing business as Zlien (Plaintiff), and a reply filed by Defendant (R. Doc. 27).  Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED in part and DENIED in part**.

## FACTS AND PROCEDURAL BACKGROUND

According to its amended complaint, Plaintiff is a software platform that serves parties in the construction industry by providing accounts receivable and construction payment services. (R. Doc. 20, at 3.)  Plaintiff offers its customers "self help" resources, such as construction notices and lien forms, so that its customers can exert and maintain control over their security

1

rights on construction programs. *Id.* Plaintiff offers these services through its website, zlien.com. *Id.*

Plaintiff alleges that it has invested substantial time, money, and energy creating a website that will attract customers and drive sales. The website includes special features designed to achieve this goal. For instance, Plaintiff alleges that its website has a feature that allows the user to obtain specific lien information for each individual state (state-by-state resources). *Id.* at 4. Plaintiff alleges that the website's state-by-state resources include frequently asked questions for each state, a chart displaying unique lien information specific to each state, and selected text from each state's statutes on mechanics lien and bond law. *Id.* Plaintiff alleges that each page of its website is marked with a copyright notice.

Plaintiff alleges that Defendant, which provides a similar construction document preparation and filing service through its web platform, visited Plaintiff's website and copied the material therein. In particular, Plaintiff alleges that Defendant has copied the "resources" section of Plaintiff's website, posted the information on its own website, and now claims it as its own. Plaintiff also alleges that Defendant has used "misrepresentations, suppressions, and other unfair tactics" with respect to Defendant's website to unfairly compete with Plaintiff.

Plaintiff brought this suit on April 8, 2016. (R. Doc. 1.) On September 15, 2016, Plaintiff filed an amended complaint (R. Doc. 20), alleging violations of 17 U.S.C. § 501 for copyright infringement, and 15 U.S.C. § 1125(a) (§ 43 of the Lanham Act) for trade dress infringement. The amended complaint also alleges violations of Louisiana law, including the Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA) La. Rev. Stat. § 51:1401 *et seq.*, and fraud under Louisiana Civil Code Article 1953, and makes a demand for stipulated damages pursuant to Louisiana Civil Code Article 2007. Additionally, the amended complaint requests that Defendant be enjoined from copying, posting, or making any other infringing use or distribution of Plaintiff's protected materials.

Defendant has filed this partial motion to dismiss, requesting that the Court dismiss Plaintiff's claims for trade dress infringement, breach of contract, fraud, and unfair trade practices. (R. Doc. 22-1, at 1.)[1] Defendant also requests that the Court strike Plaintiff's demand for attorneys' fees and treble damages. Finally, Defendant requests an award of reasonable attorneys' fees and costs incurred in bringing its motion to dismiss Plaintiff's LUTPA claim.

---

[1] The only claim in Plaintiff's amended complaint that Defendant does not request the Court to dismiss is Plaintiff's Copyright Act claim.

3

## PARTIES' ARGUMENTS

Defendant argues that Plaintiff's Lanham Act, breach of contract, LUTPA, and fraud claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)). First, Defendant contends that these claims are all preempted by Plaintiff's Copyright Act claim. Additionally, Defendant argues that Plaintiff's amended complaint fails to plead the Lanham Act, breach of contract, LUTPA, and fraud claims with sufficient factual detail to survive Rule 12(b)(6) motion to dismiss.

Plaintiff argues that none of its claims are preempted by the Copyright Act because they are causes of action entirely separate from Plaintiff's Copyright Act claim. Further, Plaintiff contends that it has pled all of its claims with sufficient detail to survive Defendant's motion to dismiss.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim

4

which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### Lanham Act Claim

Defendant's first argument is that Plaintiff's Lanham Act claim is preempted by the Copyright Act because Plaintiff's Lanham Act claim is merely a restatement of its Copyright Act claim. Defendant supports this position by referring the Court primarily to cases where courts, upon motions for summary judgment, dismissed Lanham Act claims when the Copyright Act provided a sufficient

remedy.  (R. Doc. 22-1, at 6-7.); *see, e.g., Shaw v. Lindheim*, 919 F.2d 1353, 1364-65 (9th Cir. 1990) ("We decline to expand the scope of the Lanham Act to cover cases in which the Federal Copyright Act provides an adequate remedy.").  But the Fifth Circuit has stated:

> The federal Copyright Act does not preempt the federal Lanham Act, or vice-versa.  In fact, it is common practice for copyright owners to sue for both infringement under the 1976 Copyright Act and unfair competition under the Lanham Act.  Such a litigation posture has never been disallowed by the courts on grounds of either preemption or impermissible double recovery.

*Alameda Films v. Authors Rights Restoration Corp.*, 331 F.3d 472, 482 (5th Cir. 2003) *reh'g denied*, (5th Cir. June 26, 2003).

In this case, Plaintiff's Lanham Act claim is based upon the allegation that Defendant's copying of certain parts of Plaintiff's website is likely to lead to "consumer confusion" and "deceive as to the affiliation, connection, or association of [Defendant] with [Plaintiff]."  (R. Doc. 20, at 12).  Though similar, the Copyright Act claim and the Lanham Act claim are distinct.  Thus, Defendant's argument that Plaintiff's Lanham Act claim is preempted by the Copyright Act must fail at this stage of litigation, especially when it is not clear whether Defendant's Copyright Act claim will provide an adequate remedy.  *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) ("[I]n construing the Lanham Act, we have been careful to caution

6

against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright.") (internal citations omitted).

Defendant's second argument is that Plaintiff's Lanham Act claim failed to provide enough factual detail to satisfy Rule 8(a). The relevant portion of the Lanham Act, upon which Plaintiff's claim is based, provides:

a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). The Fifth Circuit has articulated a two-step analysis to determine whether a Lanham Act trade dress infringement cause of action is available. *Allied Mktg Grp. Inc. v. CDL Mktg, Inc.*, 878 F.2d 806, 813 (5th Cir. 1989). The first step is to

determine whether the trade dress is protectable, which requires inquiry into three issues: (1) distinctiveness, (2) secondary meaning, and (3) functionality. *Id.* The next step is to determine whether the trade dress has been infringed, which "is shown by demonstrating that the substantial similarity in trade dress is likely to confuse consumers." *Id.*

Defendant argues that Plaintiff's amended complaint fails to identify any protectable trade dress. (R. Doc. 22-1, at 13.) In particular, Defendant argues that Plaintiff fails to sufficiently synthesize the unique elements of its website to demonstrate how those elements qualify as protectable trade dress. It is true that the amended complaint does not painstakingly describe the protectable nature of the trade dress in its section setting forth the Lanham Act cause of action. However, the amended complaint does clearly identify unique aspects of Plaintiff's website. In particular, the amended complaint alleges that Plaintiff's website has a page providing state-by-state resources for lienholders. (R. Doc. 20, at 4-5.) The amended complaint also alleges that the website's design is "widely recognized by consumers and has become a valuable indicator of the source and origin of the information provided" therein. (R. Doc. 20, at 11.) This satisfies the first requirement of trade dress protectability, at least at the pleading stage. *See Express Lien, Inc. v. Nat'l Ass'n of Credit Mgmt.*, 13-3323, 2013 WL 4517944, at *4 (E.D. La. Aug. 23, 2013) (finding

that plaintiff satisfied the pleading requirement for a Lanham Act cause of action when the plaintiff alleged that aspects of its website design were "widely recognized by consumers and [had] become a valuable indicator of the source and origin of the information" in the website).

Plaintiff also satisfies the second pleading requirement that the substantial similarity in trade dress is likely to confuse consumers.  The amended complaint lists five specific elements of Plaintiff's website which it alleges that Defendant copied, and which contribute to the "look and feel" of Plaintiff's website. For example, Plaintiff alleges that Defendant copied the phrases "Trusted by Thousands" and "Thousands trust us" from Plaintiff's website and that Defendant used them.  (R. Doc. 20, at 11.) Additionally, the amended complaint alleges that Defendant copied and used the state-by-state resources section, as well as the chart format and layout from Plaintiff's website.  These allegations are sufficient to satisfy the pleading requirement.

**Breach of Contract Claim**

Defendant's two arguments in favor of dismissing Plaintiff's breach of contract claim are (1) that the breach of contract claim is preempted, and (2) that the factual allegations in the amended complaint fail to provide enough factual detail to satisfy the pleading stage.

The first issue is whether a claim for breach of contract is preempted by the Copyright Act.  It is not.  Defendant argues that Plaintiff's breach of contract claim is no different than its copyright claim, and that the Copyright Act preempts breach of contract claim.  The Copyright Act's preemption provision states that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . are governed exclusively by this title" and "no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."  17 U.S.C. § 301(a).  Courts in the Fifth Circuit employ a two-part test to determine whether the Copyright Act preempts a state law claim.  "First, the claim is examined to determine whether it falls within the subject matter of copyright as defined by 17 U.S.C. § 102.  And second, the cause of action is examined to determine if it protects rights that are equivalent to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106."  *Spear Mktg., Inc. v. Bancorpsouth Bank*, 791 F.3d 586, 594 (5th Cir. 2015) (internal citations omitted).

When determining whether state law claims are equivalent to copyright, courts apply the "extra elements" test.  As the Fifth Circuit has explained:

> [I]f the act or acts of [the defendant] about which [the plaintiff] complains would violate both misappropriation law and copyright law, then the state right is deemed

10

> "equivalent to copyright." If, however, one or more
> qualitatively different elements are required to
> constitute the state-created cause of action being
> asserted, then the right granted under state law does
> not lie "within the general scope of copyright," and
> preemption does not occur.

*GlobeRanger Corp. v. Software AG U. S. A, Inc.*, 836 F.3d 477, 485
(5th Cir. 2016) (citing *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166
F.3d 772, 787 (5th Cir. 1999)). The Fifth Circuit has addressed
the preemption question in the context of a breach of contract
claim and held that the claim was not preempted by the Copyright
Act. *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th
Cir. 1990). In that case, the breach of contract claim "involve[d]
an element in addition to mere reproduction, distribution or
display . . . ," namely a contractual promise. *Id.; see also
Dorsey v. Money Mack Music, Inc.*, 304 F. Supp.2d 858, 865 (E. D.
La. 2003) ("This circuit has consistently recognized that a
legitimate breach of contract allegation serves to defeat
preemption."). Thus, Plaintiff's breach of contract claim should
not be dismissed due to Copyright Act preemption.

Defendant's second argument is that the amended complaint
fails to provide enough factual detail to satisfy the pleading
requirement. The essential elements of a claim for breach of
contract under Louisiana law are "(1) the obligor's undertaking an
obligation to perform, (2) the obligor failed to perform the
obligation (the breach), and (3) the failure to perform resulted

in damages to the obligee." *Favrot v. Favrot*, 2010-986, p. 14-15 (La. App. 4 Cir. 2/25/11); 68 So. 3d 1099, 1108-09.  But before there can be a breach of contract, a contract must exist in the first place.  A contract is formed in Louisiana by the consent of the parties established through offer and acceptance.  La. Civ. Code. art. 1927.  There must be a "meeting of the minds" between the parties to make a contract enforceable.  *Read v. Willwoods Cmty.*, 2014-1475, p. 5 (La. 3/17/15); 165 So. 3d. 883, 887.

Here, Defendant argues that no such meeting of the minds occurred and that Plaintiff's amended complaint fails to allege any contractual undertaking on the part of Defendant.  (R. Doc. 22-1, at 16.)  This is because the alleged breach of contract stems from Defendant's use of Plaintiff's website.  The amended complaint alleges that use of Plaintiff's "websites, products, forms, data, information, resources, or other services" is governed by its website's Terms of Use.  (R. Doc. 20, at 13.)  Plaintiff further alleges that by using Plaintiff's website, products, and services, Defendant "agreed to be bound," though the amended complaint fails to identify what Defendant agreed to be bound to.  The amended complaint also alleges that the Terms of Use on Plaintiff's website include an "Intellectual Property Information" section which states that the information on Plaintiff's website is protected by copyright, and which sets forth stipulated and liquidated damages for unauthorized copying and use of the content.

12

Notably absent from the amended complaint is any clear allegation that Defendant knowingly entered into a contract with Plaintiff.  Rather, the amended complaint relies upon the mere existence of Terms of Use on Plaintiff's website, and alleges that use of the website obligates Defendant, and all other users, to abide by the website's Terms of Use.  The amended complaint fails to claim that Defendant engaged in a meeting of the minds with Plaintiff, or that Defendant was even aware of the Terms of Use.

The Court does not foreclose the possible existence of a contractual relationship being consummated between a website host and a website user through use of the website, but only concludes that no such relationship has been alleged in Plaintiff's amended complaint.  *See Internet Archive v. Shell*, 505 F. Supp.2d 755, 760, 764-67 (D. Col. 2007) (finding that a website owner's allegation that its website included a copyright notice[2] which stated that copying anything on the site would result in the user entering into a relationship with the website owner satisfied the existence of a contractual relationship at the pleading stage). Accordingly, Defendant's motion to dismiss the breach of contract claim is granted.

---

[2] The copyright notice stated: "IF YOU COPY OR DISTRIBUTE ANYTHING ON THIS SITE—YOU ARE ENTERING INTO A CONTRACT. READ THE CONTRACT BEFORE YOU COPY OR DISTRIBUTE.  YOUR ACT OF COPYING AND/OR DISTRIBUTING OBJECTIVELY AND EXPRESSLY INDICATES YOUR AGREEMENT TO AND ACCEPTANCE OF THE FOLLOWING TERMS:" *Internet Archive*, 505 F. Supp.2d at 760.

**LUTPA Claim**

As with the previous two claims, Defendant argues that Plaintiff's Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA) claim is preempted by the Copyright Act. Once again, the Fifth Circuit has held otherwise: "Because a cause of action under the Louisiana Unfair Trade Practices Act requires proof of fraud, misrepresentation or other unethical conduct, . . . , we find that the relief it provides is not 'equivalent' to that provided in the Copyright Act and, thus, it is not pre-empted." *Comput. Mgmt. Assistance Co. v. DeCastro, Inc.*, 220 F.3d 396, 404-05 (5th Cir. 2000). Accordingly, Plaintiff's LUTPA claim is not preempted.

Defendant also argues that Plaintiff has failed to sufficiently allege a LUTPA claim. LUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A). "Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal" due to the unfair trade practices has a right to bring a LUTPA claim. La. Rev. Stat. § 51:1409(A). Conduct only qualifies as unfair if it offends established public policy. *Double-Eight Oil and Gas L.L.C. v. Caruthers Producing Co.*, 41,451, p. 8 (La. App. 2 Cir. 11/20/06); 942 So. 2d 1279, 1284. Courts are to decide on a case-by-case basis whether a defendant's behavior so qualifies, but "a plaintiff

must prove 'some element of fraud, misrepresentation, deception, or other unethical conduct' on the part of the defendant." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-0871, p. 10 (La. 4/23/10); 35 So. 3d 1053, 1059 (citing *Dufau v. Creole Eng'g, Inc.*, 465 So. 2d 752, 758 (La. App. 5. Cir. 1985)). Furthermore, only "egregious" actions are sanctionable under LUTPA. *Id.* at 1060.

The amended complaint alleges that Defendant has made numerous misrepresentations on its website, and that Defendant has used these misrepresentations and suppressions of truth to unfairly compete with Plaintiff in a manner which is against public policy. The amended complaint alleges that Defendant has used these "misrepresentations, suppressions, and other unfair tactics" to gain an unjust advantage. (R. Doc. 20, at 18.)  In particular, Plaintiff alleges Defendant violated LUTPA through the following actions:[3]

> 1. Defendant violated Plaintiff's copyrights and misrepresented or suppressed the truth about the material's authorship to Defendant's customer base and to potential customers.

---

[3] The amended complaint also alleges that Defendant violated LUTPA through behavior allegedly detailed in a case called *NACM Tampa Inc., Et Al., v. Alexaner Mensh, Et Al.*, which the amended complaint alleges was filed in the United States District Court for the Middle District of Florida on July 30, 2015. (R. Doc. 20, at 16.)  The amended complaint alleges that the plaintiff in that case alleged Racketeer Influenced and Corrupt Organizations Act, Florida Deceptive and Unfair Practices Act, and theft of intellectual and proprietary property claims against the Defendant. *Id.*  The amended complaint vaguely alleges that the referenced case is somehow related to the instant matter, but the connection is entirely unclear.  This allegation was not sufficiently pled.

2. Defendant violated the copyrights of parties other than Plaintiff in an attempt to unfairly compete with Plaintiff.

3. Defendant misrepresented on its website that it was "trusted by thousands" when the amended complaint alleges that Defendant is not trusted by thousands of customers because it does not have thousands of customers.

4. Defendant misrepresented on its website that "100% of Nationwide Clients Experience Increased Productivity and Streamlined Workflow," when the amended complaint alleges that Defendant has no study, survey, or information to support this statement, and that it is not true.

5. Defendant misrepresented on its website that "97% of Nationwide's Clients Experience Increase in Timely Payments," when the amended complaint alleges that Defendant has no study, survey, or information to support this statement, and that it is not true.

6. Defendant misrepresented on its website that "91% of Nationwide's Clients Avoid Collections," when the amended complaint alleges that Defendant has no study, survey, or information to support this statement, and that it is not true.

7. Defendant misrepresented on its website that "2 Hours [are] Saved Per Notice by Nationwide Clients," when the amended complaint alleges that Defendant has no study, survey, or information to support this statement, and that it is not true.

8. Defendant misrepresented on its website that that the company has been in existence or has experience of "more than 20 years," when the amended complaint alleges that Defendant was first incorporated in 2011.

Allegation number 1, is purely referential to Plaintiff's Copyright Act claim and is therefore preempted. But the other allegations (numbers 2 through 8) are entirely independent from Plaintiff's Copyright Act claim, and are therefore not "equivalent" to actions prohibited by the Copyright Act.

16

The next question, then, is whether the allegations here satisfy a cause of action under LUTPA.  As described above, the Louisiana Supreme Court has instructed courts to analyze the applicability of LUTPA on a case-by-case basis, and only "egregious" acts of unfairness fall within the statutory scheme. *Cheramie Servs., Inc.*, 35 So. 3d at 1059-60.  Defendant's argument, which focuses mainly on Copyright Act preemption and the conclusory nature of Plaintiff's LUTPA claim, does not include any case law to support its assertion that the amended complaint fails to allege that Defendant's behavior was "immoral, unethical, oppressive, or unscrupulous."  (R. Doc. 22-1, at 19.); *see Monroe Med. Clinic, Inc. v. Hosp. Corp. of Am.*, 622 So. 2d 760, 781 (La. App. 2 Cir. 1993).  Neither has the Court identified any support for the proposition that the type of conduct alleged by Plaintiff is not egregious enough to state a LUTPA cause of action.

Nevertheless, a LUTPA claimant must allege that it has suffered "an ascertainable loss" as a result of another person's unfair acts.  *Cheramie Servs., Inc.*, 35 So. 3d at 1057 (referring to La. Rev. Stat. § 51:1409(A)); *see also Hurricane Fence Co. v. Jensen Metal Prods., Inc.*, 12-956, p.7 (La. App. 5 Cir. 5/23/13); 119 So. 3d 683, 688 ("To sustain a cause of action under LUTPA, the petition must pass a two-prong test: (1) it must allege the plaintiff suffered an ascertainable loss; and (2) the loss must have resulted from another's use of unfair methods of competition

17

and unfair or deceptive acts or practices."). The amended complaint fails to identify any concrete ascertainable loss allegedly suffered by Plaintiff. Accordingly, Plaintiff's LUTPA claim must fail.

**Fraud Claim**

Plaintiff's fraud claim is based upon the same allegations as its LUTPA claim, specifically allegations numbered "1-8" in this Order's "LUTPA Claim" section. Plaintiff brings his fraud claim pursuant to Louisiana Civil Code Article 1953: "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." Fraud, as applied here, is a vice of consent, the remedy for which is rescission of a contract. *See Stutts v. Melton*, 2013-0557, p. 9 (La. 10/15/13); 130 So. 3d 808, 814 ("Fraud vitiates consent . . . and thus is grounds for rescission."); *see also* La. Civ. Code art. 1958 (providing that damages and attorneys' fees also may be available in addition to rescission). Furthermore, the correct party to bring a claim for fraud is the victim of the fraud. "The victim of fraud is induced into an error through a misrepresentation or suppression of the truth." Saul Litvonoff, *Vices of Consent, Error, Fraud, Duress and an Epilogue on Lesion*, 50 La. L. Rev. 1, 53 (1989).

The allegations in Plaintiff's amended complaint do not suggest that Plaintiff itself engaged in a contract with Defendant based upon the alleged misrepresentations found in Defendant's website.[4]   Rather, allegations numbers 1-8 in the LUTPA Claims section of Plaintiff's amended complaint allege that Defendant's misrepresentations have misled customers or potential customers. In other words, the alleged misrepresentations have purportedly misled individuals other than Plaintiff.  Because Plaintiff is not itself claiming to be a victim of fraud as applied in Louisiana Civil Code Article 1953, Plaintiff has not succeeded in stating a claim.  Plaintiff's fraud claim must therefore be dismissed.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *12(b)(6) Motion to Dismiss, Motion to Strike Claim for Attorneys' Fees, and Motion for Award of Attorneys' Fees* **(R. Doc. 22)** is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss Plaintiff's trade dress infringement claim is **DENIED.**

---

[4] An important distinction exists between Plaintiff's breach of contract claim and its fraud claim.  The breach of contract claim alleges that the *Defendant* entered into a contractual relationship with Plaintiff when Defendant used Plaintiff's website.  By contrast, Louisiana Civil Code Article 1953 only provides a cause of action to a *plaintiff* whose consent to enter into a contract was vitiated due to fraud.  Because Plaintiff never alleged to have been induced through fraud to enter in a contract with Defendant, the fraud claim is not applicable to these facts.

**IT IS FURTHER ORDERED** that Defendant's motions to dismiss Plaintiff's breach of contract and LUTPA claims are **GRANTED**. Plaintiff's breach of contract and LUTPA claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiff is granted leave to file a second amended complaint with respect to the LUTPA and breach of contract claims within twenty-one days of this Order.

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss Plaintiff's fraud claim is **GRANTED**. Plaintiff's fraud claim is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant's motion to strike Plaintiff's claim for attorneys' fees and treble damages pursuant to Plaintiff's LUTPA claim is **GRANTED**. Nothing in this Order prohibits Plaintiff from requesting attorneys' fees and other damages available through LUTPA in a second amended complaint.

**IT IS FURTHER ORDERED** that Defendant's motion for award of attorneys' fees and costs is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's *Partial Motion to Dismiss for failure to State a Claim, Motion to Strike Claim for Attorneys' Fees and Treble Damages, and Motion for Award of Attorneys' Fees and Costs* (Rec. Doc. 8) is **DENIED as moot**.

New Orleans, Louisiana this 5th day of December, 2016.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

20