UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EXPRESS LIEN, INC. | * | CIVIL ACTION NO.: 2:16-cv-02926 |
| dba ZLIEN | * | |
| | * | |
| VERSUS | * | JUDGE:  CARL BARBIER |
| | * | |
| NATIONWIDE NOTICE, INC. | * | |
| | * | MAGISTRATE:  KAREN WELLS ROBY |
| AND | * | |
| | * | |
| ABC INSURANCE COMPANY | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

### NATIONWIDE NOTICE, INC.'S
### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Nationwide Notice, Inc. ("Nationwide") respectfully submits this Memorandum in Support of its Motion to For Summary Judgment on Plaintiff, Express Lien, Inc., d/b/a Zlien's ("Zlien")'s remaining claims. Zlien has no evidence to support its remaining causes of action and indeed, the undisputed evidence shows that Zlien's claims fail. Accordingly, Nationwide's motion should be granted, and Zlien's suit should be dismissed with prejudice.

### PRELIMINARY STATEMENT

Zlien's remaining claims for (i) copyright infringement, (ii) trade dress infringement, (iii) breach of contract, (iv) and violation of Louisiana's Unfair Trade Practices Act ("LUTPA") must be dismissed because Zlien cannot present evidence to create a genuine issue of material fact for trial on those causes of action.

*First*, the most significant of Zlien's remaining claims—for alleged copyright infringement of a state-by-state resources chart (the "Resources Chart") identified as Exhibit A of the Second Amended Complaint (Rec. Doc. 32, Ex. A)—suffers from multiple independent

flaws, each of which is fatal to Zlien's cause of action.   Discovery is closed and despite Nationwide's repeated requests, Zlien utterly failed to produce any documents sufficient to show Zlien owns a valid copyright over the Resources Chart.   While Zlien produced a single screenshot purportedly showing the registration of the copyright number it alleges covers the Resources Chart, Zlien never produced a registration certificate for that copyright or any documents showing it submitted the Resources Chart to the Copyright Office with Zlien's application.   As a result, Zlien cannot carry its burden of proving at trial that it owns a valid copyright covering the Resources Chart.   What's more, even if Zlien did have proof it owns a valid copyright—which it does not—the Resources Chart merely recites publicly-available ***facts*** from state lien statutes and is not an "original work" capable of copyright protection.   Further, Zlien has no evidence it suffered any "actual damages" resulting from the alleged infringement. Therefore, even if Zlien could prove its Copyright Act claim, its remedy would be limited to a single statutory damage award.   This single statutory damage award is unavailable, however, because Zlien cannot prove the necessary elements of its Copyright Act claim.

*Second*, Zlien's trade dress claim based upon a page of Zlien's website containing a map of the United States (the "Resources Map") cannot survive summary judgment.   A plain comparison of Zlien's Resources Map with Nationwide's website (attached to the Second Amended Complaint as Exhibit B) shows they are not sufficiently similar to give rise to a trade dress infringement. (*See* Rec. Doc. 32, Ex. B).   Zlien cannot prove Nationwide copied the Resources Map, but rather the evidence shows that a graphic designer chose all the design elements for the external pages of Zlien's site, including but not limited to the fonts, colors, and layout.   What's more, emblematic of Zlien's inability to prove any trade dress infringement is Zlien's admission in written discovery that it cannot identify a ***single*** customer that was confused as to the origin of the Resources Map.   This claim fails.

*Third*, Zlien's breach of contract claim fails because Zlien has no evidence that a contract existed in the first place.  Zlien's Second Amended Complaint alleges Nationwide agreed to Zlien's "Terms of Use" by registering a "free user account" on Zlien's website, but Zlien later admitted in written discovery that it has no evidence to support this allegation.  As a result, Zlien cannot meet its burden of proving the existence of a contract, much less any breach thereof.

*Fourth*, Zlien's cause of action for Nationwide's alleged violation of LUTPA— based upon alleged misrepresentations on Nationwide's website and violations of other parties' copyrights (other than Zlien)—must be dismissed because Zlien admitted in discovery that it could not identify any copyrights of "others" that Nationwide violated, and Zlien cannot prove any statements on Nationwide's website are false.  Nationwide's owner Alex Mensh confirmed the veracity of the statements for which Zlien complains, and Zlien has no evidence to contradict his testimony.  Zlien's LUTPA claim also fails for a second, independent reason: Zlien has no proof that Nationwide's alleged violations of LUTPA caused Zlien any "ascertainable loss." Zlien cannot show that a single customer left Zlien and hired Nationwide as a result of the alleged LUTPA violations, nor can Zlien prove any lost profits or other damage.

Summary judgment in Nationwide's favor is appropriate here, and the Court should dismiss Zlien's entire lawsuit with prejudice.

## **FACTUAL BACKGROUND**

Zlien and Nationwide are business competitors providing web platforms that allow users to prepare and file lien and notice documents for construction projects. (Rec. Doc. 32, ¶¶ 8, 21).  Nationwide has some information free to visitors of the "external" pages of its website, www.nationwidenotice.com, but users must register with a free user account to access the "internal" pages of the site, and to use Nationwide's platform to prepare lien and notice

documents. (Ex. A, Alex Mensh Affidavit, at ¶¶ 5-8).  The "external" pages of Nationwide's website are visible to anyone who visits www.nationwidenotice.com, and were created by a graphic designer that Nationwide hired. (Ex. A, Mensh Affidavit, at ¶¶ 5-8).

In 2015, one of Nationwide's customers—Fred Mansky at Blue Line Rentals ("Blue Line")—requested that Nationwide post a brief summary of each state's lien laws and notice requirements on Nationwide's websites so Blue Line employees could easily reference those requirements while using Nationwide's platform. (Ex. A, Mensh Affidavit, at ¶ 10; Ex. B, Mensh Depo, at 93:1-25).   Because Nationwide did not have such a summary, Mansky subsequently faxed a spreadsheet document to Nationwide, approximately 10 to 12 pages long, that contained a summary of each state's lien and notice rules. (Ex. A, Mensh Affidavit, at ¶ 11; Ex. B, Mensh Depo, at 100:13-101:11).   Mansky allowed Nationwide to use the document, which was nondescript and had no markings suggesting it was created by Zlien or any other company. (Ex. A, Mensh Affidavit, at ¶ 11; Ex. B, Mensh Depo, at 101:1-11).  In January 2016, Nationwide reproduced most of the contents of the spreadsheet set by Manksy and posted the material to the internal pages of Nationwide's website. (Ex. A, Mensh Affidavit, at ¶ 12). Nationwide reviewed the document for errors and corrected the rules for at least the state of Florida. (Ex. A, Mensh Affidavit, at ¶ 12).   Because the chart was on the internal pages of Nationwide's website and a user-only wall, the chart was not indexed by search engines such as Google and would not appear in search results; the chart was accessible only to existing customers of Nationwide. (Ex. A, Mensh Affidavit, at ¶ 13).

At the end of March 2016, at least one employee of Zlien—Paul Dean—created a "fake account" with Nationwide so he could participate in an online demonstration of Nationwide's website and gain "competitive intelligence" about Nationwide's web platform. (Ex. C, Dean Depo, at 88:7; 91:7-14).  Mr. Dean created a Gmail account under the name Donald

Caillouet of Quality Exterior Services, LLC ("QES") and posed as Mr. Caillouet (the owner of that company) to communicate with Nationwide, and to lead Nationwide to believe QES was a potential customer. (Ex. C, Dean Depo, at 92:12-93:7; 116:8-118:23).[1] Mr. Dean did not use his own name, did not advise Nationwide that he worked for its competitor, Zlien, and did not use Nationwide's website for legitimate lien or notice services. (Ex. C, Dean Depo, at 92:12-93:7; 137-6-25).   Instead, Mr. Dean admitted he posed as Mr. Caillouet, that he created a Gmail account for QES "solely to find information on Nationwide's website," and that he used the account to take screenshots of Nationwide's internal pages and to record a video of the Nationwide demonstration on March 31, 2016 without Nationwide's permission. (Ex. C, Dean Depo, at 95:2-6; 137:6-25).

During the demonstration, Mr. Dean discovered the Resources Chart on the internal pages of Nationwide's website which contained the state-by-state summaries of lien and notice requirements that Nationwide had obtained from Blue Line.  Just days after the March 31, 2016 demonstration, Zlien filed suit against Nationwide on April 8, 2016 asserting various claims based on Nationwide's alleged violation of Zlien's intellectual property rights. (Rec. Doc. 1).   Zlien never contacted Nationwide and demanded that it remove the alleged infringing material prior to filing suit, and it is undisputed that Nationwide removed the Resources Chart giving rise to Zlien's lawsuit immediately upon being served with Zlien's lawsuit. (Ex. B, Mensh Depo, at 92:18-23).   Despite Nationwide's prompt removal of the Resources Chart, Zlien

---

[1]     Donald Calliouet is the real owner of QES; Zlien's CEO Scott Wolfe testified that he sees Mr. Calliouet "once every three or four months" but that had now knowledge of whether Mr. Calliouet allowed Zlien to use his name and company to create a fictitious account with Nationwide. (Ex. D, Wolfe Depo at 175:1-177:14).

decided to pursue causes of action for (i) copyright infringement, (ii) trade dress infringement, (iii) breach of contract, and (iv) violation of LUTPA.[2]

Zlien's Second Amended Complaint attaches as exhibits the content giving rise to its intellectual property claims; Zlien's copyright infringement claim is premised upon the Resources Chart (*see* Rec. Doc. 32, Ex. A), while Zlien's trade dress infringement claim stems from a "Resources" page of Nationwide's website that primarily features a map of the United States (the "Resources Map"). (*See* Rec. Doc. 32, Ex. B).  Zlien also alleges Nationwide's intellectual property right violations constitute a breach of Zlien's "Terms of Use," a contract Zlien claims Nationwide agreed to by registering a "free user account" with Zlien's website. (Rec. Doc. 32, ¶ 52).  Zlien also alleges Nationwide violated LUTPA by violating copyrights of others (other than Zlien), and by misrepresenting certain facts regarding Nationwide's customer satisfaction on Nationwide's website. (Rec. Doc. 32, ¶ 77).

Discovery is now complete and it is readily apparent that Zlien's causes of action are unsupported by the evidence.  Indeed, Zlien has admitted in discovery that some of its critical allegations have no factual support:

- Zlien claims it lost customers as a result of Nationwide's alleged copying of the "Resources" of Zlien's website (Rec. Doc. 32, ¶ 82), but Zlien's CEO (as well as its Sales Operation Lead, Mr. Dean) had no knowledge of any customers that left Zlien and chose to use Nationwide because of its resources. (Ex. C, Dean Depo, at 164:21-165:4; Ex. D, Wolfe Depo, at 119:15-17).

- In support of its trade dress claim, Zlien alleges that Nationwide caused customers to be confused as to the origin of the content on its website. (Rec. Doc. 32, ¶ 47). However, Zlien subsequently admitted it could not identify the name of any persons or entities that have been confused, deceived or mistaken to support the allegations in Paragraph 47 of the Second Amended Complaint. (Ex. E, Responses to Second Set of Written Discovery, p. 5).

---

[2]      Nationwide moved to dismiss all of Zlien's causes of action (except for the Copyright Act claim) pursuant to Rule 12(b)(6), and this Court granted in part Nationwide's motion, dismissing with prejudice Zlien's defamation and fraud claims. (Rec. Doc. 28).

- In support of its breach of contract claim, Zlien alleges Nationwide "created a free user account" and in doing so, agreed to Zlien's Terms of Use – a contract it allegedly breached.   However, Zlien admitted the only "information" in its possession supporting Nationwide's creation of Zlien "free user account" is that "Zlien's" material appeared on Nationwide's website. (Ex. E, Responses to Second Set of Written Discovery, p. 4).  However, it is undisputed that a Zlien "free user account" would not have been necessary to view (or to obtain) the Resources Chart on Zlien's website, and Zlien's CEO Scott Wolfe testified he had no "knowledge of information" that Nationwide actually created a "free user account," *even though he signed the Second Amended Complaint alleging so, as counsel for Zlien.* (Ex. D, Wolfe Depo, 120:15-121:14; 122:15-19). This is because Nationwide never created such an account with Zlien. (Ex. A, Mensh Affidavit at ¶ 17).

- Despite alleging Zlien violated LUTPA by "violating the copyrights of other parties, other than [Zlien]" (Rec. Doc. 32 ¶ 77.A.), Zlien admitted it "cannot identify any copyrights of other parties that Nationwide allegedly violated[.]" (Ex. E, Responses to Second Set of Written Discovery, p. 5).

Zlien's litigation strategy reveals the true motivation behind its baseless and factually unsupportable allegations: throughout discovery Zlien has repeatedly attempted to obtain Nationwide's customer lists and other confidential, proprietary information about Nationwide's business, and Zlien has also made multiple attempts to acquire Nationwide in exchange for dismissing the lawsuit. (Ex. A, Mensh Affidavit, ¶¶ 19-20).  Notwithstanding the potential Rule 11 implications of Zlien's use of this lawsuit to purchase and acquire information about its competitor, Zlien's inability to present proof to support its claims warrants summary judgment. The essential elements of Zlien's causes of action lack evidence, and there are no genuine disputes of material fact to be resolved at trial.

## LEGAL STANDARD

Summary judgment shall be granted when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).  A fact is material when its resolution will affect the outcome of the action, and a dispute is genuine when the contrary evidence would be sufficient for a reasonable jury to return a verdict in favor of the non-moving party. *Brandon v. Sage Corp.*, 808 F.3d 266, 269 (5th Cir. 2015).

The movant bears the initial burden of providing the basis of its motion and identifying the pleadings and factual material demonstrating the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the movant does not bear the burden of proof on the pertinent issue at trial, then it may satisfy its summary judgment burden by pointing to the lack of evidence as to any element essential to the non-moving party's case. *Id.*  Once the movant meets its initial burden, the burden shifts to the non-moving party to produce evidence of a genuine dispute for resolution at trial.  *Brandon*, 808 F.3d at 270 (citing *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)).  The party opposing a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  It "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Brandon*, 808 F.3d at 270 (quoting *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006)).

Here, Zlien bears the burden of proof on its claims at trial, and it cannot satisfy its obligation on summary judgment of producing evidence creating a genuine dispute for resolution at trial.  To the contrary, the admissible evidence Nationwide submits shows no genuine dispute of fact, and thus the Court should dismiss Zlien's claims with prejudice.

## LAW AND ARGUMENT

### I.     Zlien's Copyright Act Claim Fails.

Zlien alleges that Nationwide copied the Resources Chart from Zlien's website without its consent. (Rec. Doc. 32, ¶ 32; Ex. A).  Although Zlien's complaint claims ownership of eight (8) individual copyrights, Zlien alleges the Resources Chart is protected only by Copyright No. TXu001761460. (Rec. Doc. 32, Ex. A).  Zlien's CEO and corporate representative did not identify any other content on Nationwide's website violative of Zlien's alleged

copyrights (Ex. D, Wolfe Depo, at 48:18-21), and therefore only the Resources Chart—allegedly covered under Copyright No. TXu001761460—gives rise to Zlien's Copyright Act claim.

### a.   Zlien Cannot Prove Ownership Of A Copyright Over The Resources Chart.

There is no evidence that Zlien submitted the Resources Chart—or any version of it—to the Copyright Office in its application for No. TXu001761460, and therefore Zlien cannot prove ownership of a copyright over the Resources Chart.

"To establish a prima facie case of copyright infringement, a copyright owner must prove (1) ownership of a valid copyright, and (2) copying [by the defendant] of constituent elements of the work that are original." *General Universal Sys. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004).  Indeed, "[b]efore a plaintiff may bring a civil action for copyright infringement, he must register the copyright with the U.S. Copyright Office." *Rogers v. Better Bus. Bureau of Metro Houston, Inc.*, 887 F. Supp. 2d 722, 727 (S.D. Tex. 2012) (citing 17 U.S.C. § 411(a)).  "A certificate of registration, if timely obtained, is prima facie evidence both that a copyright is valid and that the registrant owns the copyright." *General Universal Sys.*, 379 F.3d at 141; *see also Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012); *Soc'y of the Holy Transfiguration Monestary, Inc. v. Gregory*, 689 F.3d 29, 40 (1 Cir. 2012); *Papa Berg, Inc. v. World Wrestling Entm't, Inc.*, No. 12-2406, 2013 WL 2090547, at *11 (N.D. Tex. May 15, 2013).

Here, Nationwide requested in discovery "all documents relating to the registration" of each of the eight individual copyrights listed in the complaint, "including but not limited to the registration application, the Copyright Office Registration, and deposit materials." (*See* Ex. F, Zlien Original Responses to First Written Discovery Requests, pp. 14-19).  However, despite agreeing to produce documents responsive to these requests, Zlien never produced a certificate of registration for the only copyright alleged to cover the Resources Chart—No.

TXu001761460.   The only document Zlien produced that references Copyright No. No. TXu001761460 is a screenshot from the Copyright Office website for a work entitled "Lien Law Resources and Summary" created in 2011. (Ex. G, ZLIEN0003629).  This document is not proof of ownership of a valid copyright and, moreover, does not demonstrate Zlien's efforts to obtain a copyright for the Resources Chart Zlien alleges Nationwide copied.

Moreover, even if Zlien produced a Certificate of Registration for No. TXu001761460—which it did not—Zlien still cannot prove the Resources Chart is covered by *any* of its alleged copyrights.  In order to obtain a valid copyright registration for a published work, an applicant must submit two complete copies of the work. *See* 17 U.S.C. § 408(b). Copyright registration for online works—such as the content on Zlien's website—extends *only* to the copyrightable content of the work "*as received in the Copyright Office and identified as the subject of the claim.*"*Obodai v. YouTube, LLC*, 840 F. Supp. 2d 714 (S.D.N.Y. Dec. 2011) (quoting United States Copyright Office Circular 66: Copyright Registration for Online Works, at 1 (May 209)) (emphasis added).  Material with visual representations—such as the Resources Chart alleged to have been infringed in this case—"must be deposited with the Register in order to be granted a copyright." *Schultz v. Lost Nation Booster Club*, 2014 WL 10038777, at *2 (S.D. Iowa, Oct. 14, 2014).[3]  As in *Schultz*, Zlien "needed to include the visual presentation of the website in the deposit materials in order for the copyright registration to extend to those materials." *Id.* at *3.  However, Zlien did not produce any documents showing it submitted the

---

[3]     It is not enough to submit a computer code to establish registration of visual components of a website. "For a claim in a computer program that establishes the format of text and graphics on the computer screen when a website is viewed (such as a program written in html), registration will extend to the entire copyrightable content of the computer program code. ***It will not, however, extend to any website content generated by the program that is not present in the identifying material received and that is not described in the application.***" *Schultz*, 2014 WL 10038777, at *3.

Resources Chart to the Copyright Office for any of the copyrights Zlien alleges to hold in the complaint.

Instead, Zlien's entire copyright claim hinges upon the exhibits to the complaint, which compare the charts on Zlien's and Nationwide's websites side-by-side.  Notwithstanding that the two charts are reproductions that Zlien created for the complaint, and not actual screenshots of the two webpages, a side-by-side comparison of these two pages is not sufficient to prove a copyright claim.  The court in *Schultz* dismissed a copyright claim on summary judgment based on this very evidence, finding that the "plaintiff may not prove her case by simply comparing the visual representations of the website side-by-side." *Id.* at \*3. As in *Schultz*, Zlien's copyright claim must be dismissed with prejudice because Zlien cannot prove the existence of a valid copyright over the Resources Chart.  Without the material Zlien submitted to the Copyright Office (if any), it is impossible for the trier of fact to compare the material subject to Zlien's Copyright No. TXu001761460 and the chart that formerly existed on Nationwide's website.

Moreover, it is settled that for online works, "the registration should be limited to the content of the work asserted to be published on the date given on the application." *Mortgage Mkt Guide, LLC v. Freedman Report, LLC*, 2008 WL 2991570, at \*3 (D.N.J. Jul. 28, 2008). "Many works transmitted online, such as websites, are revised or updated frequently.  Generally, copyrightable revisions to online works that are published on separate days ***must be registered individually, with a separate application and filing fee...***" *Id.* (citations omitted) (emphasis added).  Here, Copyright No. TXu001761460 purportedly was registered in 2011, yet Zlien's CEO and corporate representative Mr. Wolfe admitted its alleged copyrights were not updated as frequently as Zlien's website changed. (Ex. D, Wolfe Depo, at 94:5-8).  Indeed, Mr. Wolfe testified (i) changes in the law "inspired some textual changes" to the Resources Chart (ii) Zlien

"converted over time the summaries or the bullet points into frequently asked questions," (iii) Zlien added "legal components," questions, subjects, and "links and connections," and (iv) Zlien changed the appearance and design of the Resources Chart over time. (Ex. D, Wolfe Depo, at 51:23-53:9; 53:24-54:6). Despite these significant changes to the Resources Chart, however, there is no evidence Zlien updated its initial 2011 registration to reflect the evolving content and appearance of the Resources Chart. As such, Zlien cannot prove ownership of a valid copyright to support its copyright infringement claim.

### b. The Resources Chart Is Not Subject To Copyright Protection.

Zlien's copyright claim fails for a second, independent reason: the Resources Chart merely recites the rules contained in various lien and notice laws and therefore, the content in the Resources Chart is not original to the author. State statutes—such as those recited in the Resources Chart—are not subject to copyright protection because they are facts, not original works. *See Feist Publ'ns Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 369 (1991); *Veeck v. S. Bldg. Code Cong. Int'l*, 293 F.3d 791 796 (5th Cir. 2002) ("It should be obvious that for copyright purposes, laws are 'facts.'"). In *Veeck*, the Fifth Circuit determined that "'the law,' whether it has its source in judicial opinions or statutes, ordinances or regulations, is not subject to federal copyright law." *Veeck*, 293 F.3d at 800. Under *Veeck*, Zlien cannot base its copyright infringement claim on the collection of rules taken from state statutes in the Resources Chart.

### c. Zlien Cannot Prove Actual Damages Resulting From The Alleged Infringement.

In addition to Zlien's inability to prove the existence of a valid copyright over any original work, Zlien cannot prove any damages in this case. Although a plaintiff in a copyright infringement suit may elect statutory or actual damages, Zlien cannot recover statutory damages in this case because a valid copyright registration is a prerequisite to an award of statutory

damages. *See* 17 U.S.C. § 412.  Zlien has no evidence of a valid copyright registration covering the Resources Chart to recover any statutory damages, and it has no evidence of any actual damages.

Under 17 U.S.C. §§ 504(a)(1) and (b), a copyright owner is permitted to recover his own 'actual damages,' including lost profits and 'reasonable royalty rates,' or what a willing buyer would have been reasonably required to pay a willing seller as a licensing fee for the actual use of the copyrighted material by the infringers." *MGE UPS Sys. v. GE Consumer Indus. Inc.*, 622 F.3d 361, 366 (5th Cir. 2010).  Zlien has not offered any competent, admissible evidence to show actual damages, lost profits, or what a willing buyer would have paid to license the Resources Chart.  Indeed, Zlien's CEO admitted it does not license the Resources Chart to anyone. (Ex. D, Wolfe Depo, at 72:17-25).

Although Mr. Wolfe conclusorily testified that Zlien has "suffered immensely as a result of all these intellectual property violations," he could not identify how much lost business Zlien suffered as a result of the Resources Chart's 3-month presence on Nationwide's website. (Ex. D, Wolfe Depo, 118: 15-17).  Further, while Zlien's written discovery responses listed eleven (11) "customers and/or prospective customers" that it believes it lost due to Nationwide's infringement, Mr. Wolfe did not have any knowledge of any customers that left Zlien and chose to use Nationwide *because of its resources*. (Ex. D, Wolfe Depo, at 119:15-17).  Neither did Mr. Dean, Zlien's Sales Operations Lead, know of any customers that left Zlien to join Nationwide because of Nationwide's resources. (Ex. C, Dean Depo, at 164:21-165:4).  Moreover, it is undisputed that *none* of the customers Zlien listed in its written discovery responses registered with Nationwide during the period of alleged infringement (January through April, 2016). (*See*

Ex. H, Zlien's Nov. 8, 2017 Supplemental Discovery Responses; Ex. A, Mensh Affidavit, at ¶ 12; Ex. I, List of Customer Registration Dates).[4]

        What's more, any claim that Zlien lost customers as a result of Nationwide's use of the Resources Chart is nonsensical:  Zlien posted its chart containing the lien law summary publicly, and it could be accessed freely by anyone – customer or not – without registering with Zlien's website.  In contrast, the Resources Chart posted on Nationwide's website was accessible only to *existing* customers of Nationwide who had registered user accounts with Nationwide and had usernames and passwords. (Ex. A, Mensh Affidavit, at ¶¶ 13-14).  No customer of Zlien's would leave Zlien—where it had unrestricted access to the material in question—solely because the same material was also available on Nationwide's website – but with restricted access. It simply cannot be said Zlien lost any business as a result of the alleged intellectual property violations.

        Furthermore, Zlien's proffered expert—Jason Marsh—cannot establish any summary judgment evidence of Zlien's alleged "actual damages."  Marsh did not investigate whether Zlien lost customers or sales, he did not analyze Zlien's financials, and, in any event, he admitted he is not an expert in calculating damages. (Ex. J, Marsh Depo, at 61:2-25; 64:8-17; 65:9-14).  Marsh also admitted he supplied only a hypothetical opinion without analyzing any underlying facts whatsoever. (Ex. J, Marsh Depo, at 63:1-64:1; *see also* Nationwide's Motion To Exclude Testimony of Jason Marsh).  The only calculation Marsh provided—multiplying a 4,128.44 figure given to him by the CEO (which Marsh did not verify) with $150/hour— purportedly represents the "value of the content," but that is not a measure of damages for

---

[4]     Exhibit J is subject to the parties' Consent Protective Order, and is submitted separately under Nationwide's motion to file that exhibit under seal.

copyright infringement. As a result, nothing in Marsh's report (or his testimony) can establish an issue of fact for trial regarding Zlien's alleged "actual damages," They cannot be proven.

### d.   Alternatively, Zlien Is Limited To A Single Statutory Damage Award.

Even if Zlien could prove a valid copyright—which it cannot—Zlien's inability to prove "actual damages" limits its recovery to a single statutory damage award under 17 U.S.C. § 504(c).  As a result, Nationwide moves in the alternative for a judgment precluding Zlien from seeking multiple statutory damage awards for the alleged infringement.

Zlien incorrectly contends that the Resources Chart gives rise to 50 separate statutory damage awards because there is a separate chart for each of the 50 states.  Zlien's argument conflicts with well-settled law, including a recent pronouncement from the Fifth Circuit.  The amount of statutory damages in a copyright infringement suit hinges upon the number of original works infringed upon, not the number of infringements—"to determine the number of violations, the court need only sum the number of separate, individual works which were the subject of a defendant's infringing activities." *Archlightz & Films Pvt. Ltd. v. Video Palace, Inc.*, 303 F. Supp. 2d 356 (S.D.N.Y. 2003).  Courts grant multiple statutory damage awards and find "separate works" only when the works at issue are separately registered. *See Columbia Pictures v. Krypton Broadcasting*, 106 F. 3d 284 (9th Cir. 1997) (each episode of television series constituted a "separate work for purposes of Section 504(c)" because the episodes were "separately written, produced, and ***registered***.") (emphasis added); *see also Philips v. Kidsoft¸*52 U.S.P.Q. 1102 (D. Md. 1999) (finding that "whether or not the mazes copied by Kidsoft possess separate economic value is irrelevant because they are not individual copyrighted."); *Stokes Seeds Ltd. v. Geo W. Park Seed Co.¸*783 F. Supp. 104 (W.D.N.Y. 1991) (single statutory damage award for an entire book of photographs because photographs constituted only one work and were registered once).

- 15 -

Critically, this is the law in the Fifth Circuit; in *Cullum v. Diamond A. Hunting, Inc.*, 2012 WL 3206587, 484 F. App'x 1000 (5th Cir. 2012), the court found that a collection of photographs was "a compilation instead of individual works for purposes of calculating damages" because it was "one work in which a number of contributions, constituting separate and independent works in themselves, [were] assembled into a collective whole" and because the plaintiff "registered the photographs in question under a single copyright registration number."

Here, there is no evidence that at all that Zlien separately registered each state's chart with the Copyright Office. Indeed, according to Zlien's own complaint, *at most* there is only one copyright registration—TXu001761460—for the Resources Chart (and there is no support for even that, as described above). As such, to the extent the Court does not dismiss the copyright claim for the reasons set forth above, Zlien should be limited to seeking a single statutory damage award.

## II.  Zlien's Trade Dress Claim Fails Because The Two Webpages Are Not Sufficiently Similar.

"Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (citation omitted). "The purpose of trade dress protection, like trademark protection, is to 'secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing products. *See id.*

"Trade dress infringement is established by showing that: (1) the dress qualifies for protection, which requires considering functionality, distinctiveness, and secondary meaning; and (2) that the dress has been infringed, which requires considering the likelihood confusion."

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1117-18 (5th Cir. 1991). "[T]he application of trade dress law to websites is a somewhat 'novel' concept." *Parker v. Waichman LLP v. Gilman Law LLP*, No. 12-4784, 2013 WL 28632928 (E.D.N.Y. Jul. 24, 2013) (citation omitted).

Here, Zlien alleges Nationwide copied the "look and feel" of the "Resources Map" page on Zlien's website. (*See* Rec. Doc. 32, Ex. B).  However, Zlien cannot prove the necessary elements of its trade dress claim; Nationwide's owner testified that it hired a graphic designer who created this "external" page of Nationwide's website, and the graphic designer was responsible for choosing the graphics, colors, fonts, coding, and overall appearance of the "Resources" page. (Ex. B, Mensh Depo, at 113:4-7; Ex. A, Mensh Affidavit, at ¶ 7).  Moreover, a simple comparison of Zlien's webpage and Nationwide's webpage reveals that the two sites do not have the same "look and feel."  The two webpages use different colors, different fonts, and different graphics. (Rec. Doc. 32, Ex. B).  Nationwide's users click on a map of the United States to select the state about which they seek information, while users of Zlien choose from a drop down menu. (*Id.*).  Zlien's webpage contains menu options on the left pane to access different "Lien Resources," whereas Nationwide's site contains no such menu.  Nationwide's website does not contain any of the same verbiage or headers as Zlien's website; indeed, the only similarities are (i) the map of the United States; and (ii) the "Why Us" and "Resources" links on the top pane.  It cannot be said these two lone features qualify Zlien's website for trade dress protection, as they are neither distinctive nor give rise to a secondary meaning.  Indeed, Zlien admitted in discovery that it could not identify the name of any persons or entities that have been confused, deceived or mistaken to support the allegations in Paragraph 47 of the Second Amended Complaint. (Ex. E, Responses to Second Set of Written Discovery, p. 5).  As such, Zlien cannot meet the "likely to cause confusion" element of its trade dress claim.

III.    **Zlien Admits It Does Not Have Evidence To Support Its Breach Of Contract Claim.**

After months of discovery, Zlien failed to present any evidence that Nationwide contractually agreed to Zlien's "Terms of Use," and therefore Zlien's claim that Nationwide breached that contract necessarily fails.

This Court previously recognized that, "before there can be a breach of contract, a contract must exist in the first place." (Rec. Doc. 28, p. 12). "A contract is formed in Louisiana by the consent of the parties established through offer and acceptance." (*Id.*) (citing La. Civ. Code art. 1927). Further, this Court ruled that "[n]otably absent from the amended complaint is any clear allegation that [Nationwide] knowingly entered into a contract with [Zlien]," and this Court allowed Zlien to filed another amended complaint to allege Nationwide's consent to Zlien's "Terms of Use." (Rec. Doc. 28, p. 13). Zlien filed its Second Amended Complaint and added paragraphs alleging, *inter alia*, that Nationwide, "either by itself or through a proxy or fictitious name, created a free user account" on Zlien's website, and in so doing, "affirmatively check[ed] off a box entitled 'I agree to the terms of use.'" (Rec. Doc. 32, ¶ 53).

However, Zlien has no evidence to support the allegations that Nationwide created a free user account or otherwise consented to Zlien's "Terms of Use." Zlien admitted as much in discovery—by admitting that "the only information in [Zlien's] possession to support the allegation that Nationwide 'created a free user account' with Zlien and 'copied content from at least 100 different webpages … is the fact that [Zlien] discovered the Material on Nationwide's website." (Ex. E, Zlien Responses to Second Set of Discovery, RFA 6). However, Nationwide did not create a "free user account" with Zlien. (Ex. A, Mensh Affidavit, at ¶ 17). The existence of the Resources Chart on Nationwide's website does nothing to create an issue of fact regarding whether Nationwide created a "free user account" with Zlien. First, it is

undisputed that a "free user account" was not necessary to access the lien law summary chart on Zlien's website, and therefore the existence of the Resources Chart on Nationwide's website does not prove Nationwide signed up for such an account. (Ex. D, Wolfe Depo, at 122:15-19). Second, Zlien's CEO Mr. Wolfe testified that he had no "knowledge of information" to support his belief that Nationwide created a "free user account." (Ex. D, Wolfe Depo, at 120:15-121:14). Third, Mr. Wolfe's lack of knowledge is unsurprising because it is undisputed that Nationwide received the Resources Chart from one of its customers—Mr. Mansky with Blue Line Rentals— and that Nationwide neither requested nor directed Mr. Mansky to visit Zlien's website or to create an account. (Ex. B, Mensh Depo, at 93:1-25; Ex. A, Mensh Affidavit, at ¶ 17).   Simply put, Zlien cannot prove Nationwide created an account and agreed to Zlien's "Terms of Use." These allegations have no factual basis and were added only in an attempt to avoid dismissal after this Court pointed out the legal deficiencies in Zlien's breach of contract claim.  Now on summary judgment, Zlien can no longer hide behind its unsupported allegations and the lack of evidence supporting the existence of a contract is fatal to its breach of contract claim.

### IV.    Zlien's LUTPA Claim, Too, Is Unsupported and Must Be Dismissed.

Zlien's final claim for Nationwide's alleged violations of LUTPA fares no better than its other claims, and must also be dismissed for two independent reasons, each of which is fatal to Zlien's final cause of action.  Zlien alleges Nationwide violated LUTPA by (i) violating the copyrights of other parties (other than Zlien), and (ii) making misrepresentations surrounding Nationwide's customer satisfaction. (Rec. Doc. 32, ¶ 77).  However, Zlien admitted in discovery it could not identify any copyrights of other parties that Nationwide violated, and Zlien has no evidence Nationwide committed any misrepresentations on its website.   Additionally, Zlien cannot prove it suffered any "ascertainable loss" resulting from Nationwide's alleged LUTPA violations.

It is well-settled that the range of "unfair trade practices" giving rise to a violation of LUPTA is "extremely narrow." *Quality Envtl. Processes v. Hamer*, 447 So. 2d 543, 548 (La. 5/7/14). Only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned under LUTPA. *See id.* To succeed on a LUTPA claim, a plaintiff must show that the alleged conduct "offends established public policy and … is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie Serv. v. Shell Deepwater Prod.*, 35 So. 3d 1053, 1059 (La. 2010) (quotation and citation omitted). One must also suffer an "ascertainable loss" to recover for a violation of LUTPA. *See Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 2014-323 (La. App. 4 Cir. 10/1/14), 151 So. 3d 670, 678 (citations omitted).

Here, Zlien has no evidence to support Nationwide's alleged violations of LUTPA. Zlien alleges Nationwide violated LUTPA by "violating copyrights of other parties, other than [Zlien]," however, Zlien admitted in discovery it "cannot identify any copyrights of other parties that Nationwide allegedly violated[.]" (Ex. E, Responses to Second Set of Written Discovery, p. 5). Further, the statements on Nationwide's website that Zlien alleges constitute "misrepresentations" are nothing of the sort; Nationwide's owner, Mr. Mensh, testified in detail regarding why each of the statements is true based upon his personal knowledge and decades of experience in the construction industry:

- Nationwide's services allow customers to save approximately two hours per notice, based on Mr. Mensh's personal experience in the industry. (Ex. B, Mensh Depo, at 126:10-127:22).

- Mr. Mensh calculated the percentage of customers that avoid collections, and experience increased and timely payments when using construction lien document creation services, to support the percentages listed on Nationwide's website relating to customer satisfaction. (Ex. B, Mensh Depo, at 131:5-132:19).

- Using Nationwide's services allows customers to perform their lien and construction notice work more quickly than they could on their own, which

- 20 -

necessarily increases productivity and workflow. (Ex. B, Mensh Depo, at 132:20-133:12).

Despite Zlien's bald allegations that the aforementioned statements are false, Zlien has no evidence to contradict the testimony of Mr. Mensh, and therefore cannot create an issue of fact for trial.

Further, Zlien's LUTPA claim fails for a second, independent reason: Zlien has no evidence it suffered any "ascertainable loss" as a result of Nationwide's alleged misrepresentations. "To sustain a cause of action under LUTPA, two things must be proved: (1) an ascertainable loss was suffered; and (2) the loss must result from another's use of unfair methods of competition and unfair or deceptive acts or practices." *Carroll Insulation & Window Co. v. Biomax Spray Foam Insulation*, 50,112 (La. App. 2 Cir. 11/18/15), 180 So. 3d 518, 524. As with Zlien's Copyright Act claim, there is no evidence that Zlien suffered any loss or damages resulting from Nationwide's alleged misrepresentations. There is no proof that Zlien lost any customers to Nationwide because of these statements, or any proof of lost profits or other damage to Zlien's business resulting from the statements on Nationwide's website. Zlien's LUTPA claim should be dismissed with prejudice.

## **CONCLUSION**

Zlien's remaining claims for (i) copyright infringement, (ii) trade dress infringement, (iii) breach of contract, and (iv) violation of LUTPA should not survive summary judgment. Because there is no evidence supporting these causes of action, Zlien cannot meet its burden on summary judgment of presenting a genuine issue of material fact for trial. Nationwide's motion should be granted and this Court should dismiss Zlien's remaining claims, and the entirety of Zlien's suit, with prejudice.

Respectfully submitted,

*/s/ Jamie  L. Berger*
Jamie L. Berger (LA Bar No. 32340)
Michael A. Balascio (LA Bar No. 33715)
Laurence D. LeSueur (LA Bar No. 35206)
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, LLC
909 Poydras Street, 24th Floor
New Orleans, Louisiana 70112
jberger@barrassousdin.com
mbalascio@barrassousdin.com
llesueur@barrassousdin.com
Tel:  (504) 589-9700
Fax: (504) 589-9701

*Attorneys for Defendant*
*Nationwide Notice, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been filed using this Court's ECF procedure, which will send electronic noticing to all counsel of record this 17th day of January, 2018.

*/s/ Jamie  L. Berger*